UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS PHILLIPS,

                Petitioner,

**DECISION AND ORDER**
**No. 08-CV-6124T**

   -vs-

BRIAN S. FISCHER,
Commissioner, N.Y.S. Department of
Correctional Services

                Respondent.
_____

**I. Introduction**

*Pro se* Petitioner Douglas Phillips ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered September 2, 2003, in New York State, Supreme Court, Monroe County, convicting him, after a jury trial, of Burglary in the Second Degree (N.Y. Penal Law ("Penal Law") § 140.25 [2]), Criminal Mischief in the Fourth Degree (Penal Law § 145.00 [1]), and Attempted Petit Larceny (Penal Law §§ 110.00, 155.25).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

**II. Factual Background and Procedural History**

At approximately 7:15 a.m. on Sunday, September 29, 2002, George McKnight ("McKnight") and his wife left their home at

7 Kenmore Street in the City of Rochester, New York to go to church. Before they left, McKnight locked all the doors and the windows, including the locks on both the inside and outside of the two entry doors. When the couple returned a few hours later, they discovered their television set, with what appeared to be blood on it, sitting on the sidewalk leading to their front door, which was wide open. McKnight entered the house to the find the kitchen window smashed in with a brick, which lay in the middle of his kitchen floor, and blood smeared on the window area and the sink below it. A garden hoe that had been in the basement lay broken on his kitchen table, a pipe wrapped in tape with blood on it lay on the dining room table, and a hammer, which had been in McKnight's kitchen drawer when he left for church, was on his couch. The McKnights' bedroom, which was located on the second floor of the home, was littered with their clothing and personal items. McKnight called 911. Trial Transcript [T.T.] 176-184.

Officer David Barnes ("Officer Barnes") of the Rochester Police Department arrived at the McKnights' home at approximately 11:20 a.m. Officer Barnes described the house to be in the same condition the McKnights found it upon returning from church. After observing the smashed kitchen window and what appeared to be blood in the kitchen and on the television set, Officer Barnes called for a member of the Technician's Unit to respond. Technician Thomas

Walton ("Walton") arrived in response to Officer Barnes' request. T.T. 209-215.

Walton processed the scene of the crime by attempting to recover fingerprints and blood samples from the inside latch of the kitchen window and from the television set. No prints of value were located from the window or the television set. Walton sent the blood samples for testing/analysis and entry into New York State's DNA profiling system ("CODIS"). T.T. 220-228, 235.

On March 21, 2003, Robert Siersma ("Siersma"), an investigator for the Monroe County District Attorney's Office, met with Petitioner to obtain a swab which would be suitable for DNA testing. Petitioner's attorney was present at the time Siersma met with Petitioner. Petitioner was cooperative and a sample of his DNA was obtained by swabbing the inside of his mouth with a small instrument. The swab was turned over to the Monroe County Public Safety Laboratory for DNA testing. T.T. 262-267. The results of this testing showed that Petitioner was the source of the blood on both the McKnights' television set and the inside latch of their kitchen window. The chance of another individual matching the DNA profile of Petitioner was 1 in 280 quadrillion. T.T. 278-286.

On May 9, 2003, Phillips was indicted by a Monroe County Grand Jury and charged with Burglary in the Second Degree, three counts of Criminal Mischief in the Fourth Degree, and Attempted Petit Larceny. Petitioner pleaded not guilty and proceeded to trial.

Prior to the commencement of the trial, a Sandoval hearing was held, wherein the trial court determined that Petitioner, should he take the stand, could be cross-examined concerning two prior burglary-related offenses. T.T. 16-22.

A jury trial took place before the Honorable Francis A. Affronti from July 22 to July 25, 2003. Petitioner did not testify and did not call any witnesses on his behalf. Petitioner was found guilty of Burglary in the Second Degree, Criminal Mischief in the Fourth Degree, and attempted Petit Larceny, and was found not guilty of the two additional counts of Criminal Mischief in the Fourth Degree. T.T. 359-361.

On September 2, 2003, Petitioner was sentenced as a persistent violent felony offender to an indeterminate term of twenty years to life imprisonment. Sentencing Minutes [S.M.] 7-8, 20, 22-23.

Petitioner appealed his judgment of conviction, which was unanimously affirmed by the Appellate Division, Fourth Department on November 17, 2006. People v. Phillips, 34 A.D.3d 1231 (4th Dept. 2006); lv. denied, 8 N.Y.3d 848 (2007).

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the trial court's Sandoval ruling was an abuse of discretion; (2) the trial court erred in failing to discharge a "grossly unqualified" juror; (3) the trial court erred in ordering him to submit to DNA testing; and (4) ineffective assistance of trial counsel. Petition [Pet.]

¶ 12A-D (Dkt. #1); Pet'r. Memo. of Law in Support of Pet. for Writ of Habeas Corpus [Mem.], Points III-IV (Dkt. #7).

**III. General Principles Applicable to Habeas Review**

    **A.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan

v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.     Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.     The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that

resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

**IV. Petitioner's Claims**

**1. Trial Court's Sandoval Ruling was an Abuse of Discretion**

Petitioner claims that the trial court abused its discretion when it ruled, at a pre-trial Sandoval hearing, that Petitioner, should he testify at trial, could be cross-examined concerning two prior felony convictions for burglary related offenses. Petitioner argues that the trial court's ruling effectively precluded him from testifying, thereby depriving him of his right to present a defense. Pet. ¶ 12B. Although properly exhausted in the state courts, this claim does not present an issue that is cognizable by this Court on federal habeas review.

"It is well settled that a [habeas] petitioner's failure to testify [at trial] is fatal to any claims of constitutional deprivation arising out of a Sandoval type ruling because, in the absence of such testimony the Court has no adequate non-speculative basis upon which to assess the merits of the claim." Peterson v. LeFevre, 753 F. Supp. 518, 521 (S.D.N.Y. 1991), aff'd mem., 940 F.2d 649 (2d Cir. 1991); see Luce v. United States, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of

improper impeachment with a prior conviction, a defendant must testify.").

This means that habeas relief is not warranted if the petitioner decided not to testify, regardless of the fact that the trial court's Sandoval ruling may have motivated petitioner's decision. See McKenzie v. Poole, 03-CV-4253, 2004 U.S. Dist. LEXIS 23598, at *15 (E.D.N.Y. Nov. 23, 2004); see also Goston v. Rivera, 462 F.Supp.2d 383, 390 (W.D.N.Y Nov. 26, 2006) (finding that Petitioner's Sandoval claim did not raise constitutional issue cognizable on habeas review where Petitioner did not testify at trial); Oslan v. Parrott, 01 Civ. 6551, 2004 U.S. Dist. LEXIS 11681, at *6-*7 (S.D.N.Y. June 22, 2004) ("Petitioner chose not to testify at trial. Therefore, petitioner's claim based on the trial court's Sandoval ruling does not raise a constitutional issue cognizable on habeas corpus review."); Delgado v. Duncan, 02 Civ. 4929, 2003 U.S. Dist. LEXIS 24123, at *12 (E.D.N.Y. Nov. 13, 2003) ("Because petitioner did not testify at trial, this claim [regarding the Sandoval ruling] is not cognizable on habeas review."). Here, Petitioner elected not to testify at trial and, thus, his Sandoval claim cannot provide a basis for habeas relief. The claim is dismissed.

**2. Trial Court Erred in Failing to Discharge a "Grossly Unqualified" Juror and Trial Court Erred in Ordering Petitioner to Submit to DNA Testing**

Next, Petitioner argues that the trial court erred when it: (1) failed to discharge a "grossly unqualified" juror who allegedly

slept through portions of the trial; and (2) ordered Petitioner to submit to DNA testing. Pet. ¶ 12A, C; Mem., Point III. Petitioner raised both of these claims on direct appeal, and they were rejected on state procedural grounds for failure to properly preserve them for appellate review.[1] Phillips, 34 A.D.3d at 1232. Consequently, as discussed below, these claims are procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at C.P.L. § 470.05(2)) to deny Petitioner's claims because the issues had not been properly preserved for appellate review. The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71,

---

[1] With regard to Petitioner's latter claim, the Court notes that the record provided by Petitioner to the Appellate Division, Fourth Department, was inadequate to review his claim. The record on appeal does not contain the trial court's signed Order apparently directing him to submit to a saliva sample for DNA testing. Similarly, Petitioner did not provide the minutes of any court appearances relative to said Order. Therefore, whether or not this claim had been properly preserved at trial, appellate review of it would have been impossible. See N.Y. Crim. Proc. Law ("C.P.L.") § 470.05(2); People v. Kinchen, 60 N.Y.2d 772, 773-74 (1983) ("a claimed deprivation of [a] State constitutional right [sic] . . . may be raised on appeal, notwithstanding that the issue was not preserved by having been specifically raised in a [sic] motion or at trial. This does not, however, dispense with the need for a factual record sufficient to permit appellate review.")

79-82 (2d Cir. 1999). The Appellate Division's reliance on C.P.L. § 470.05(2) is an adequate and independent state ground, which precludes this Court's review of Petitioner's claims that the trial court erred in failing to discharge an allegedly unqualified juror and in ordering Petitioner to submit to DNA testing.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). "Cause" is defined as "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray, 477 U.S. at 488). To demonstrate prejudice, a petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982).

With regard to his claim that the trial court erred in failing to discharge an allegedly unqualified juror, Petitioner does not allege cause and prejudice necessary to overcome the procedural default, nor has he demonstrated that this Court's failure to review this claim will result in a miscarriage of justice.

With regard to his claim that the trial court erred in ordering him to submit to DNA testing, Petitioner does not specifically allege cause and prejudice, nor has he demonstrated that a miscarriage of justice will result from this Court's failure to review the issue. However, he does fault counsel, by way of a stand-alone claim in his habeas petition, for failing to object to the People's application for DNA testing on the grounds that said application insufficiently identified him. Pet. ¶ 12D. A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991); Frady, 456 U.S. at 168. To claim that attorney error excuses a procedural default, a habeas petitioner must have properly presented and exhausted an ineffective assistance of counsel claim in the state courts. See Edwards, 529 U.S. at 453. Here, Petitioner has done so; however, as discussed under Section "IV, 3" below, his stand-alone ineffective assistance of counsel claim lacks merit. Because Petitioner cannot establish ineffective assistance of counsel as cause for the procedural default, the Court need not consider prejudice resulting therefrom. See McCleskey, 499 U.S. at 502 (finding that where a petitioner is unable to show cause, the Court need not consider actual prejudice); see also Acosta v. Giambruno, 326 F. Supp. 2d 513, 520 (S.D.N.Y. 2004). Petitioner has also

failed to demonstrate that this Court's failure to review the claim will result in a miscarriage of justice.

Accordingly, habeas relief is unavailable to Petitioner and these claims are dismissed.

### 3. Ineffective Assistance of Trial Counsel

Petitioner asserts that he was deprived of his Sixth Amendment right to the effective assistance of counsel based on, *inter alia*, counsel's failure to challenge the People's application for DNA testing on the grounds that said application insufficiently identified him. Pet. ¶ 12D; Mem., Point IV. Petitioner raised this claim on direct appeal, and it was rejected on the merits. The Appellate Division determined that counsel's failure to challenge the procedure used to obtain the DNA sample from Petitioner "likely would have been futile" and therefore "does not constitute ineffective assistance of counsel." Phillips, 34 A.D.3d at 1232 (internal citations omitted).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would

have been different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding."  Id.  To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689.  A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

"Failure to make a meritless argument does not amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999).  Here, Petitioner argues that counsel was ineffective because he did not oppose the People's application for DNA testing on the grounds that the People's supporting affidavit insufficiently identified him as the "Douglas Phillips" referred to in the attached document from New York State Police Forensic Investigation Center, DNA Database Unit.[2]  See Pet'r. Br. on

---

[2] In particular, he contends that the People's application for DNA testing failed to provide any type of identifying data, such as a date of birth, social security number, DIN, or NYSID number, to show that the Douglas Phillips in the Monroe County Jail was the same Douglas Phillips that was a DOCS inmate. See Pet'r. Br. on Appeal, Point IV, 24.  As discussed at footnote "1" above, the record on appeal does not contain the trial court's signed Order apparently directing Petitioner to submit to a saliva sample for DNA testing, nor does it contain any minutes of any court proceedings relative to said Order.  Rather, an unsigned copy of the People's application was submitted as part of the record on appeal, and is denoted and referred to as "Appendix C" by Respondent.  The Court's review of this claim, therefore, is based solely on the limited record before it regarding this matter.

Appeal, Points III-IV. The Court rejects this contention insomuch as the record reflects that although the supporting affidavit attached to the People's Order to Show Cause only refers to Petitioner as "Douglas Phillips," the attached letter, incorporated therein, from New York State Police, DNA Database Unit, specifically identifies which "Douglas Phillips" the order refers to by name, aliases, NYSID number, and parole status. See Order to Show Cause and Affirmation of Sandra Doorley, Esq., dated 01/30/03 (Resp't App. C). Thus, based on the record before this Court, the Court cannot find that it was unreasonable for counsel not to oppose the People's application for DNA testing on the grounds of insufficient identification.

Additionally, Petitioner argues further that he was denied effective assistance by counsel's unfamiliarity with the applicable caselaw on the issue of pre-indictment DNA testing. Mem., Point IV. To support this contention, he cites an incident that occurred at sentencing wherein counsel, pursuant to Petitioner's request, informed the court that he and Petitioner had a conversation several days prior to sentencing in which he was unable to remember the name of the case which explained why the People were entitled to ask the trial court to order DNA testing. S.M. 13-14. Contrary to Petitioner's contention, there is nothing on the record before this Court that suggests that counsel was, in fact, unfamiliar with the law on the matter of pre-indictment DNA testing at the time of

the People's application.  The incident Petitioner cites, which occurred long after the People's application, is taken out of context and shows only that counsel could not recall the name of a case, not that he was unfamiliar with the relevant law itself. Thus, Petitioner has failed to show that counsel's performance, under the circumstances, was constitutionally deficient within the meaning of Strickland.  Because Petitioner is unable to meet the reasonableness prong of Strickland, the Court need not address the prejudice prong.  See Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) ("'[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.'" (alterations in original) (quoting Strickland, 466 U.S. at 697)).

Accordingly, the Court cannot find that the state court's determination of this issue was contrary to or an unreasonable application of Strickland.  The claim is dismissed.

**V.    Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also

-16-

hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   July 15, 2010
         Rochester, New York